UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: APPLICATION FOR ACCESS TO CERTAIN SEALED VIDEO EXHIBITS | Case No. 21-MC-78 (JDB) |

## MEMORANDUM OPINION

Chief Judge Howell has issued a district-wide Standing Order that provides a process for the media to request access to video exhibits in criminal cases that relate to the events that occurred at the U.S. Capitol on January 6, 2021.[1] Sixteen media organizations[2] (collectively, the "Press Coalition") have jointly filed a motion pursuant to that Order seeking to obtain certain video recordings submitted to this Court in United States v. Klein, Crim. A. No. 21-236 (D.D.C.). The government does not object. But the defendant in that case, Federico Klein, opposes petitioners' request. For the following reasons, the Court will grant petitioners' motion in part and deny it in part.

## Background

Federico Klein faces criminal charges for his participation in the January 6 events. See

---

[1] See Standing Order 21-28 (BAH) (May 14, 2021), at 5–6, https://www.dcd.uscourts.gov/sites/dcd/files/SO%2021-28_Pandemic_Media%20Access%20to%20Video%20Exs%20in%20Pretrial%20Capitol%20Cases_20210514.pdf ("Standing Order 21-28").

[2] The sixteen media organizations are: Cable News Network, Inc.; American Broadcasting Companies, Inc. d/b/a ABC News; The Associated Press; Buzzfeed, Inc. d/b/a BuzzFeed News; CBS Broadcasting Inc. o/b/o CBS News; Dow Jones & Company, Inc., publisher of The Wall Street Journal; The E.W. Scripps Company; Gannett Co., Inc.; Gray Media Group, Inc.; Los Angeles Times Communications LLC, publisher of The Los Angeles Times; National Public Radio, Inc.; NBCUniversal Media, LLC d/b/a NBC News; The New York Times Company; Pro Publica, Inc.; Tegna, Inc.; and WP Company LLC, d/b/a The Washington Post.

United States v. Klein, -- F. Supp. 3d --, 2021 WL 1377128, at *1 (D.D.C. Apr. 12, 2021). Following his arrest, a magistrate judge ordered that Klein be detained pending trial. Id. Klein sought this Court's review of that decision on March 31, 2021. See id. at *2. The parties described the video evidence against Klein in their briefing, but did not submit copies of any videos to the Court. See United States v. Klein, Crim. A. No. 21-236 (D.D.C.) ("Klein Docket"), ECF Nos. 22, 25, 27. The Court held a hearing on April 9, with all parties appearing by video due to the COVID-19 pandemic. See id., Min. Entry (Apr. 9, 2021). The government presented some Metropolitan Police Department body-worn camera footage at the hearing, but was unable to play certain clips because of technical difficulties. Klein, 2021 WL 1377128, at *3 n.3. In accordance with this District's "Continuity of Operations Plan During the COVID-19 Pandemic," public access to the hearing was provided by teleconference.[3] Three days later, the Court ordered that Klein be released from custody on strict conditions pending trial. See id. at *1.

The prosecution of individuals who participated in the January 6 events (the "Capitol Cases") has garnered significant media attention. In response to a letter from the Press Coalition, Chief Judge Howell entered Standing Order 21-28 on May 14, 2021, implementing a district-wide procedure for members of the media to file applications with the Court to access video exhibits in those Cases through a "drop box" system. The Order provides in relevant part:

> Members of the media seeking access to video exhibits submitted to the Court in Capitol Cases may file an application, pursuant to D.D.C. LCrR 57.2, to the presiding judge in the case . . . and the judge may seek the position of the parties. Upon grant of such media application, the government shall make the video exhibit available to any member of the media with the necessary access credentials provided by the government, unless the order otherwise limits access. Members of the media provided access to video exhibits in

---

[3] See Continuity of Operations Plan During the COVID-19 Pandemic, U.S. District Court for the District of Columbia (July 15, 2020), at 8, https://www.dcd.uscourts.gov/sites/dcd/files/Continuity%20of%20Operations%20Plan%20during%20COVID%2019%20Pandemic%20External.pdf.

> a particular case pursuant to such order may view those exhibits using the 'drop box' technical solution proposed by the [U.S. Attorney's Office of the District of Columbia]. No recording, copying, downloading, retransmitting or further broadcasting of video exhibits in a particular case is permitted, unless such permission is granted by the presiding judge, who may seek the position of the parties.

Standing Order 21-28 at 5–6.

The Press Coalition filed the instant application pursuant to Standing Order 21-28 on June 1, 2021, requesting access to "certain video recordings that have been submitted to the Court" in Klein and "permission to record, copy, download, retransmit, and otherwise further publish" those videos.[4, 5] Appl. for Access to Video Exs. ("Appl.") [ECF No. 1] at 1, 3. The government does not object to the application. See Gov't's Resp. to Appl. for Access to Video Exs. ("Gov't's Resp.") [ECF No. 3]. But Klein opposes the request, contending that the Court "has not been provided with any videos," and alternatively, that releasing more videos of him would prejudice his defense. See Def.'s Resp. to Appl. for Access to Video Exs. ("Def.'s Resp.") [ECF No. 5] at 2. The application is now ripe for consideration.[6]

## Legal Standard

"The common-law right of public access to judicial records 'is a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch.'" In re Leopold, 964 F.3d at 1127 (quoting MetLife, Inc. v. Fin. Stability Oversight

---

[4] The Press Coalition's application was submitted on June 1, 2021, but the matter was not docketed and assigned to the undersigned judge until June 14, 2021 after the Clerk's Office received the filing fee.

[5] Similar applications have been filed by the Press Coalition in several other Capitol Cases before other judges of this Court. Some raise common law and constitutional challenges to Standing Order 21-28 itself. This case does not.

[6] Although the Press Coalition asserts rights under both the common law and the First Amendment, it does not suggest that, in this context, the First Amendment entitles it to any relief that the common law does not. Hence, the Court will consider the application only as it pertains to the common law to avoid "unnecessarily passing on a constitutional question." See In re in the Matter of the Application of Jason Leopold to Unseal Certain Elec. Surveillance Applications & Orders ("In re Leopold"), 964 F.3d 1121, 1127 (D.C. Cir. 2020).

3

Council, 865 F.3d 661, 663 (D.C. Cir. 2017)). "[N]ot all documents filed with courts are judicial records"; instead, "whether something is a judicial record depends on the 'role it plays in the adjudicatory process.'" Id. at 1128 (quoting SEC v. Am. Int'l Grp., 712 F.3d 1, 3 (D.C. Cir. 2013)). In all cases, though, "materials filed in court [and] 'intended to influence the court'" qualify as judicial records. United States v. Jackson, 2021 WL 1026127, at *4 (D.D.C. Mar. 17, 2021) (Howell, C.J.) (quoting In re Leopold, 964 F.3d at 1128).

The finding that material is a judicial record generates a "strong presumption in favor of public access." In re Leopold, 964 F.3d at 1128 (quoting United States v. Hubbard, 650 F.2d 293, 317 (D.C. Cir. 1980)).  But this presumption "may be outweighed by competing interests." MetLife, 865 F.3d at 665.  To balance the public and private interests at stake, the district court applies a six-factor test crafted by the D.C. Circuit in United States v. Hubbard.  See In re Leopold, 964 F.3d at 1131.  Specifically, a court must weigh:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

Id. (quoting MetLife, 865 F.3d at 665).

## Analysis

Standing Order 21-28 designates "a procedure for providing media access to video exhibits submitted in Capitol Cases." See In re Press & Public Access to Video Exhibits in Capitol Riot Cases, 2021 WL 1946378, at *7 (D.D.C. May 14, 2021) (Howell, C.J.,) (emphasis added).  It does not displace the common law right of access and instead advises that each judge should assess what type of access is appropriate on a case-by-case basis.  Id. at *5.  This Court will evaluate the

Press Coalition's application and Klein's objections by reference to both Standing Order 21-28 and the common law Hubbard test.

At the outset, Klein contests the scope of the Press Coalition's request. The application seeks "certain video recordings that [were] submitted to the Court" in Klein. Appl. at 1. The government characterizes this as a request for all "video exhibits admitted into evidence during the [April 9] detention hearing." Gov't's Resp. at 1. But Klein contends that the Press Coalition seeks only those videos "referenced" by the government in its written opposition to Klein's motion for release, and by the Court in its release decision—many of which were never shown to the Court on April 9, and none of which were "admitted into evidence." Def.'s Resp. at 2.

The application is slightly confusing in this regard, but only because the Press Coalition presumes that the videos "referenced" in court filings were indeed provided to the Court, either via disc or at the April 9 hearing. To be clear, the Court has not received any copies of video evidence in Klein. The government's opposition brief discussed a substantial amount of video footage (the bulk of which is described in the Statement of Facts attached to the Criminal Complaint against Klein), but the government was not required to file copies of any of these videos with the Court because "[a]t a detention hearing, the government may present evidence by way of a proffer," United States v. Whitton, -- F. Supp. 3d --, 2021 WL 1546931, at *2 n.2 (D.D.C. Apr. 20, 2021) (Sullivan, J.) (citing United States v. Smith, 79 F.3d 1208, 1209–10 (D.C. Cir. 1996)). The only non-public videos that have been presented to the Court are the clips from the April 9 hearing.[7]

---

[7] The Statement of Facts refers to two open-source videos of Klein, which are publicly accessible via YouTube. See Klein Docket, ECF No. 1-1, at 8–14.

In reply, the Press Coalition clarifies that, contrary to Klein's assertion, its request does encompass the videos shown to the Court on April 9. See Reply Mem. in Further Supp. of the Press Coalition's Appl. for Access to Video Exs. ("Reply") [ECF No. 4] at 2–3. Because the government played those clips at the hearing in order to influence this Court's decision, they qualify as "judicial records" subject to a strong presumption of public access. See Jackson, 2021 WL 1026127, at *4; see also In re Leopold, 964 F.3d at 1128. The fact that those clips were not formally admitted into evidence and are not currently in the Court's possession does not alter this analysis. Indeed, the Second Circuit has squarely held that video recordings played at a pretrial detention hearing but not entered into evidence constitute judicial records, even if those recordings remain in the government's hands. United States v. Graham, 257 F.3d 143, 152 & n. 5 (2d Cir. 2001) (quoting Smith v. United States Dist. Ct., 959 F.2d 647, 650 (7th Cir. 1992)); see also United States v. Martin, 746 F.2d 964, 968 (3d Cir. 1984) ("The common law right of access is not limited to evidence, but rather encompasses all judicial records and documents."). This Court agrees. The reasoning in Graham comports, moreover, with the D.C. Circuit's functional approach to judicial records. See, e.g., Am. Int'l Grp., 712 F.3d at 3–4 (considering the "role" that material "plays in the adjudicatory process" and whether the district court "relied" upon that material).

Klein does not engage with—let alone contest—this analysis. In fact, the crux of his argument seems to be that, irrespective of the common law right of access, none of the video evidence in his case falls under Standing Order 21-28 because no "video exhibits" were formally marked at the April 9 hearing or otherwise. Def.'s Resp. at 2. This argument is unconvincing. For one, Standing Order 21-28 does not displace the common law right of public access—it simply provides a procedure to facilitate media access. Hence, quibbling with the terminology in the Order cannot get Klein very far. In any event, the Court does not interpret Standing Order 21-28

6

to encompass only those videos that have been <u>formally</u> marked as "exhibits" in Capitol Cases. The Standing Order does refer to "video exhibits" as the category of materials that the Press Coalition may request. But the undeniable purpose of the Order is to facilitate access to videos that qualify as judicial records in Capitol Cases. See <u>In re Press & Public Access to Video Exhibits in Capitol Riot Cases</u>, 2021 WL 1946378, at *4 (explaining that videos shown "prior to or at detention hearings before the Court" are "undoubtedly judicial records to which the presumption of public access attaches" and crafting a procedure to streamline access to those records). Because the common law right of access does not hinge on "semantic" distinctions, <u>see</u> <u>Graham</u>, 257 F.3d at 152, it would be illogical to construe the Standing Order as Klein suggests.

The videos shown at the April 9 hearing, then, are clearly judicial records subject to Standing Order 21-28. But those are the only videos in <u>Klein</u> that fall within the ambit of the Order and the common law right of public access. Hence, to the extent that the Press Coalition seeks to obtain other videos that are only referenced in court filings, but were never shown or provided to the Court, that request will be denied.[8] <u>Cf.</u> <u>United States v. Ring</u>, 47 F. Supp. 3d 38, 42 (D.D.C. 2014) (holding that a document exchanged between the parties was not a "judicial record" where a court opinion "mention[ed] information similar" to the document's contents but "the [c]ourt had not seen" the document). The Court is not aware of, and the Press Coalition does not offer, any support for the proposition that <u>referring to</u> a video in a court filing (whether a brief or an opinion) renders that video a judicial record. And the Court fails to see how a video that has never been presented to the Court could qualify as material "intended to influence" the Court. See <u>In re</u>

---

[8] For example, the Press Coalition requests a "video clip of Klein waiving his hand in the air while he was standing on the Capitol Grounds," which was mentioned in the Court's release decision. See Reply at 4 (citing <u>Klein</u>, 2021 WL 1377128, at *8 n.7). As the decision states, however, the government simply "referenced" that clip "[a]t the hearing," 2021 WL 1377128, at *8 n.7, but the clip itself was never shown, <u>see</u> Tr. of Status/Mots. Hr'g (Apr. 9, 2021) ("Hr'g Tr.") [ECF No. 37] at 48:22–50:14.

Leopold, 964 F.3d at 1128; see also Am. Int'l Grp., 712 F.3d at 4 ("[I]f a document was never part of th[e] record, it cannot have played any role in the adjudicatory process.").

Klein's fallback argument is that the Court should deny the Press Coalition's entire application under Hubbard. But Klein offers only a one-sentence statement that the release of any videos "will most certainly be prejudicial to [him] in the preparation of his defense as well as in ensuring that an impartial jury can ultimately weigh the evidence in this case." Def.'s Resp. at 2–3. This conclusory assertion is insufficient to overcome the strong presumption in favor of public access. See Grynberg v. BP P.L.C., 205 F. Supp. 3d 1, 4 (D.D.C. 2016) ("'[V]ague assertions' of prejudice do not convince the Court that the disputed [materials] should be sealed." (quoting Am. Prof'l Agency v. NASW Assurance Servs., 121 F. Supp. 3d 21, 25 (D.D.C. 2013))). Nonetheless, even though Klein does not analyze the Hubbard factors in any detail, the Court will briefly run through them here as they apply to the videos shown at the April 9 hearing.

The Court begins with the first and sixth Hubbard factors, which heavily favor disclosure. Klein does not dispute that there is a need for public access to videos that were shown. "Media applications to inspect and copy video exhibits have been granted where the exhibits raise 'issues of major public importance related to the conduct not only of the defendant[] but also of government law enforcement agents.'" Jackson, 2021 WL 1026127, at *6 (quoting In re Appl. Nat'l Broad. Co., 653 F.2d 609, 620–21 (D.C. Cir. 1981)). The events of January 6 are "of deep national importance," and there is a strong public interest in seeing real-time images of what happened that day. Id. This Court also "specifically referred to" some of the videos from the April 9 hearing in its release decision, which only heightens the need for public access. See Hubbard, 650 F.2d at 318; see also Klein, 2021 WL 1377128, at *1–2 (referring to portions of the April 9 hearing when body-worn camera footage was shown).

8

By the same token, Klein does not contest that the government introduced the videos at the hearing for a proper purpose. The government played the videos to refute Klein's characterization of that footage, see Hr'g Tr. at 2:21-3:13, not to "gratify private spite or promote public scandal," Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978) (quoting In re Casewell, 18 R.I. 835, 836 (1893)); see also United States v. All Assets Held at Bank Julius Baer & Co., 2020 WL 7773423, at *8 (D.D.C. Dec. 30, 2020) (Harvey, M.J.) (finding that sixth factor favors disclosure when "a litigant submits [the materials at issue] with the intention that the court will rely on them"). And Klein did not object to the videos or move to seal them during the hearing itself. Hence, the first and sixth Hubbard factors weigh strongly in favor of public access.

The remaining factors—which address the identity of any objecting party, the strength of any privacy interests involved, the extent of previous public access, and the possibility of prejudice to the objecting party—likewise favor disclosure. For one, the only objecting party here is Klein. See Jackson, 2021 WL 1026127, at *7 (explaining that Hubbard provides "broader protection" when a third party's privacy or property rights are at issue). And Klein does not assert any privacy interest in the videos, nor could he "since the images of [him] were captured while he was participating very publicly" in the January 6 events. See id. Instead, he contends that releasing the videos will generate "significant media scrutiny," which, combined with the scrutiny he has already experienced, might prejudice his defense or taint the jury pool. Def.'s Resp. at 2.

Klein does not "specify what prejudice may result from disclosure" or why "rigorous voir dire" would be insufficient to ensure a fair trial. See Jackson, 2021 WL 1026127, at *8 & n.4. Moreover, his argument fails to acknowledge that much of the content of the videos at issue is already publicly accessible in other forms. The audio associated with the footage, and government counsel's detailed narration of what the footage shows, were available in real-time via the public

teleconference feed of the hearing. See, e.g., H'rg Tr. 25:6–32:18. Screenshots of the videos—which depict Klein's "most egregious conduct"—are contained within the Statement of Facts attached to the Criminal Complaint, see Jackson, 2021 WL 1026127, at *6; Klein Docket, Statement of Facts, ECF No. 1-1, and discussed in the parties' public filings as well as the Court's release decision. Open-source videos even show some of the same conduct from different angles. See, e.g., See Scenes Captured Inside US Capitol as Crowd Challenges Police, YouTube (Jan. 7, 2021) https://www.youtube.com/watch?v=qc0U755-uiM (Mins. 9:28–9:47). Indeed, after the government played the clips at the hearing, the Court observed that nothing "in the video so far has educated [the Court] in terms of what was going on there beyond what the papers and the depictions in the papers have already" shown. Hr'g Tr. at 33:2–5. Given the scope of prior public access, then, releasing the hearing clips would not prejudice Klein.[9] See In re Application of N.Y. Times Co. for Access to Certain Sealed Ct. Recs., 585 F. Supp. 2d 83, 93 (D.D.C. 2008) (ordering the disclosure of judicial records where "much of the critical information [contained therein] is already in the public forum").

In sum, the strong presumption favoring public access to the videos shown at the April 9 hearing is not outweighed by any countervailing interests. The Hubbard factors, then, strongly support disclosure. Moreover, because the right to public access includes the ability "to inspect and copy" judicial records, MetLife, 865 F.3d at 665 (quoting Nixon, 435 U.S. at 597), and Klein offers no specific objection on this point, the Press Coalition should be permitted to "record, copy, download, retransmit, and otherwise further publish" the videos as it requests. See Appl. at 3.

---

[9] The Court also observed at the April 9 hearing that the clips shown did not "advance the [government's] cause," because those particular excerpts portrayed Klein "more as an observer than a participant." Hr'g Tr. at 33:12–20. Hence, the nature of the clips further supports the Court's finding that releasing them will not prejudice Klein.

**Conclusion**

Hence, for the foregoing reasons, the Court will grant the Press Coalition's application as it pertains to the videos shown at the April 9 hearing. A separate order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: June 30, 2021